UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF GEORGIA
                          VALDOSTA DIVISION

**KINGDOM INSURANCE**
**GROUP, et al.,**

    **Plaintiffs,**

    v.

**UNITED HEALTHCARE**
**INSURANCE COMPANY, et al.,**

    **Defendants.**

Civil Action No. 7:09-cv-113 (HL)

## ORDER

This case is before the Court on the Plaintiffs' Motion to Remand. (Doc. 6). For the following reasons, the motion is granted.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are insurance brokerage firms named Kingdom Insurance Group, L.L.C., Kingdom Business Services, L.L.C., KingdomCare, L.L.C., and Kingdom Benefits Association, L.L.C., (collectively "Kingdom"). (Doc. 1 Ex. A, Compl. ¶ 14). Kingdom sells senior life and health insurance products. Id. On August 13, 2009, Kingdom filed its complaint against the Defendants in the Superior Court of Thomas County, Georgia.

In the complaint, Kingdom alleges that in 2007 Kingdom entered into a contract with insurance carrier, Defendant United Healthcare Insurance Company ("United"). The contract terms required Kingdom to market and sell

United's products and in exchange United was required to pay Kingdom commissions according to a marketing and sales hierarchy. (Compl. ¶ ¶ 23, 29). The marketing and sales hierarchy consisted of field marketing organizations, insurance agencies, and agents. (Compl. ¶ 18). The purpose of the hierarchy was to create a large network of agents and agencies to sell United's products. (Compl. ¶ 27). For each sale of its product or the enrollment of a beneficiary, United paid a commission. (Compl. ¶ 24). The total commission payout was divided among the members of the hierarchy. (Compl. ¶ 24).

After Kingdom contracted with United and became part of United's hierarchy Kingdom expanded its network of agents and agencies to sell United's products. (Compl. ¶ 29). As part of the expansion effort Kingdom brought Defendant Protectors Insurance & Financial Services, L.L.C. ("Protectors") into the hierarchy. (Compl. ¶ 36).

On July 9, 2008, Protectors entered into a contract with United where Protectors agreed to sell United's products and United promised to reimburse Protectors according to the marketing and sales hierarchy. (Compl. ¶ 39). The contract acknowledged that Protectors fell below Kingdom in the hierarchy. (Compl. ¶ 39). Kingdom and Protectors then entered into a broker agreement where Protectors acknowledged that it would receive commissions according to the hierarchy and agreed that it fell below Kingdom in the hierarchy. (Compl. ¶ 40).

The complaint alleges the Defendants did not perform under the agreements because they wrongfully excluded Kingdom from marketing efforts and potential sales of United's products. Specifically, Protectors sold United's products to National Baptist Convention members and did not include Kingdom in the marketing and sales processes. (Compl. ¶¶ 46, 51-54). As a result, Kingdom no longer fell above Protectors in the hierarchy. (Compl. ¶ 49). Ultimately, when United products were sold United did not pay Kingdom commissions. (Compl. ¶ 52).

The complaint also alleges that Kingdom developed ancillary products to sell to National Baptist Convention members. (Compl. ¶ 53). Because it was excluded from marketing and sales efforts to the National Baptist Convention members, Kingdom was unable to sell its ancillary products. Id. As a result, it lost revenue. Id.

Kingdom now seeks to recover damages for breach of contract as well as under other tort and equitable theories.

On September 11, 2009, the Defendants removed the case to this Court asserting diversity jurisdiction. (Doc. 1). Kingdom now moves to remand the case to the Superior Court of Thomas County arguing that the Defendants cannot show the required amount of controversy. (Doc. 6).

## II. ESTABLISHING DIVERSITY JURISDICTION ON REMOVAL

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove a case originally filed in state court if the defendant can show federal subject matter

3

jurisdiction. Federal subject matter jurisdiction includes diversity jurisdiction, which is established through the fulfillment of two statutory requirements: 1) complete diversity between the parties; and 2) an amount in controversy that exceeds $75,000. 28 U.S.C. § 1332(a)(1).

The Defendants assert that complete diversity between the parties exists and in its motion to remand Kingdom has not contested the existence of complete diversity. The Court, however, is not persuaded that the complete diversity requirement is satisfied.[1] Nevertheless, the Court chooses not to resolve Kingdom's motion to remand based on the lack of complete diversity. Instead, because the Defendants have not shown the amount in controversy exceeds $75,000, the Court orders that the case be remanded to the Superior Court of Thomas County.

### a. Burden of Proof in Establishing the Amount of Controversy

The defendant may remove a case based on the initial pleading or when the defendant receives a "copy of an amended pleading, motion, order or other paper" that shows that the case has become removable. 28 U.S.C. § 1446(b). When the damages sought by the plaintiff are unspecified in the complaint, the

---

[1] The complaint and notice of removal only state that Defendants David Harris, Jerry Boles, and Howard Jefferson reside in Texas. A complaint merely alleging residency, as opposed to state citizenship or domicile, is insufficient to invoke diversity jurisdiction. Duff v. Beaty, 804 F. Supp. 332, 334 (N. D. Ga. 1992); see also Held v. Held, 137 F.3d 998, 1000 (7th Cir. 1998) (stating that "allegations of residence are insufficient to establish diversity jurisdiction.").

In addition, to sufficiently allege the citizenship of a limited liability company, a party must list the citizenship of all the members of the limited liability company. Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004). A limited liability company is a citizen of any state of which a member of the company is a citizen. Id. Kingdom and the Defendants have failed to identify the citizenship of each member of Protectors, a limited liability company. They also have not identified the citizenship of the members of Kingdom's limited liability companies.

removing party bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000. Lowery v. Alabama Power Co., 483 F.3d 1184, 1208 (11th Cir. 2007). To determine whether the defendant has met this burden, the court reviews the notice of the removal and the documents received by the defendant from the plaintiff and asks "whether that document and the notice of removal unambiguously establish federal jurisdiction." Id. at 1213. The jurisdictional amount must be stated clearly on the face of the documents or readily deducible from them. Id. at 1211. If the complaint does not claim a specific amount of damages, "removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001).

Neither the defendant nor the court may speculate about the existence of jurisdiction. Lowery, 483 F.3d at 1211, 1215 n. 67. Rather, "[t]he removing defendant[s] must establish the amount in controversy by '[t]he greater weight of the evidence ... [a] superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other." Id. at 1209 (citations omitted). Removal statutes are to be construed narrowly and doubts should be resolved against removal. Allen v. Christenberry, 327 F.3d 1290, 1293 (11th Cir. 2003) (citations omitted).

### b. Whether the Court May Consider Post-Removal Evidence

The parties dispute whether the Court is limited to considering evidence filed with the notice of removal when deciding if the jurisdictional requirements have been satisfied. Generally, the rule is that the court is limited to reviewing evidence available when the motion to remand is filed, mainly the notice of removal and accompanying documents. Lowery, 483 F.3d at 1214. Nevertheless, there are exceptions to the rule which allow the court to review evidence outside the removing documents. Id. at 1214 n. 66 ("[T]here are some exceptions to the rule . . . [a] defendant would be free to introduce evidence regarding damages arising from a source such as a contract provision whether or not the defendant received the contract from the plaintiff.").

A defendant may also effectively amend a defective notice of removal upon receipt of additional evidence that supplements the notice of removal. Id.

In this case, the Court will consider the post removal evidence submitted by the Defendants, but even having considered this evidence, the Defendants have not met their burden of showing that the amount of controversy exceeds $75,000.

### III. ANALYSIS

To show that removal was proper, the Defendants direct the Court to: (1) Kingdom's complaint; (2) the contract between United and Protectors; (3) Kingdom's refusals to settle for $70,000 and $76,000; (4) Kingdom's claim for attorneys' fees; and (5) Kingdom's draft Professional Operational Agreement.

6

### a. Complaint

Kingdom demands compensatory and punitive damages, courts costs, and attorneys' fees of unspecified amounts. To establish that the amount in controversy exceeds $75,000, the Defendants argue that it is facially apparent from the complaint that the amount in controversy exceeds $75,000. They rely on Kingdom's assertion in the complaint that it was excluded by the Defendants from United's marketing efforts to the National Baptist Convention, including a marketing effort that exceeded $250,000.00.

While Kingdom does allege it was wrongfully excluded from marketing efforts, it does not claim that it was entitled to receive the entire $250,000.00 spent on one marketing effort. Instead, Kingdom claims that was entitled to receive commissions for each sale of United's products. (Compl. ¶ ¶ 23, 29). If United spent $250,000.00 on a marketing effort, then Kingdom asserts that the United product sales resulting from the marketing effort would have produced commissions paid to Kingdom. See Compl. ¶ 52 (stating that "[b]y wrongfully cutting Kingdom out of the marketing and sales efforts . . . United would and did fail to pay a commission to Kingdom . . . ."). Because Kingdom does not claim it is entitled to recover the costs of the marketing effort, the $250,000 value of the marketing effort is not probative evidence tending to show that Kingdom is entitled to commissions in excess of $75,000. Thus, the requisite amount in controversy is not facially apparent from the complaint's assertion that United spent $250,000 on a marketing effort.

The Defendants next point out that the complaint alleges Kingdom was wrongfully excluded from sales to the National Baptist Convention, an organization of "more than 7.5 million individual members," and an "enormous base of potential customers." As a result of its exclusion, Kingdom alleges it lost a "substantial amount of revenue" (Compl. ¶ 53) and "suffer[ed] great financial injury." (Compl. ¶ 64). These allegations, Defendants argue, "easily put more than $75,000 in play." They also argue that since Kingdom asks for punitive damages, the amount in controversy more likely than not is more than $75,000.

In Lowery, the Eleventh Circuit explained that

> [w]e think it highly questionable whether a defendant could ever file a notice of removal on diversity grounds in a case such as the one before us-where the defendant, the party with the burden of proof, has only bare pleadings containing unspecified damages on which to base its notice-without seriously testing the limits of compliance with Rule 11.

Id. at 1213 n. 63. Lowery cautions courts that it is unlikely that the amount in controversy will ever be facially apparent from a complaint with unspecified damages.

The Defendants cite Roe v. Michelin North America, Inc., 637 F. Supp. 2d 995 (M.D. Ala. 2009), a case where the court found it facially apparent from the complaint that the amount in controversy exceeded $75,000. The plaintiff brought a wrongful death action for punitive damages against a large tire company. Id. at 998. Although the complaint demanded an unspecified amount of compensatory and punitive damages, the court concluded that it was nearly

8

impossible to conclude that the case was worth less than $75,000. Id. It stated it used its judicial experience and common sense in finding that the amount in controversy was facially apparent from the complaint. Id. at 999. Importantly, it noted that any award of damages would have to be significant because the complaint alleged wanton conduct that caused the loss of human life. To punish and deter a large company like the defendant, the damage award would have to be substantial. Id. at 998.

The allegations that Kingdom lost "a substantial amount of revenue" from the National Baptist Convention, an "enormous base of potential customers" of "more than 7.5 million individual members" do not make it facially apparent that the amount in controversy exceeds $75,000. There is simply no way for the Court to assess how much revenue Kingdom lost as a result of being excluded from sales to the National Baptist Convention. There are no allegations regarding how many National Baptist Convention members would have bought United products had Kingdom participated in marketing and sales efforts and how many convention members purchased United products from Protectors. Further, there are no allegations regarding the commission rates which set forth the amount of payment Kingdom was entitled to receive. Thus, unlike Roe, this is not a case where the Court can find, in looking to its experience and the common sense, that the amount in controversy is greater than $75,000. The alleged injuries in this case simply are not as clear as those alleged in Roe. To estimate an amount of damages would mean the Court was speculating, which

Lowery made clear the Court is not allowed to do. Lowery, 483 F.3d at 1214-15 ("If that evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings.").

As for Kingdom's demand for punitive damages, there is no evidence before the Court on which to calculate the amount of punitive damages. The mere demand for punitive damages is not probative of the amount in controversy. See Jackson v. Am. Gen. Fin. Servs., Inc., No. 7:06-cv-19, 2006 WL 997614, at *3 (M.D. Ga. Apr. 17, 2006) (finding that the demand for punitive damages in the complaint would not be used to determine whether the amount in controversy is satisfied when the defendant relied solely on the demand for punitive damages and provided no evidence to show the Court that the amount of punitive damages would be in excess of the jurisdictional requirement).

After reviewing the complaint, the Court is unable to find that the facts alleged within it and the request for punitive damages are probative evidence tending to show that the amount in controversy exceeds $75,000.

### b. The Contract Between United and Protectors

The Defendants state that the contract between United and Protectors specified that Protectors would receive commissions for sales and renewals. Since the sale and renewal commissions could easily total thousands of dollars, the Defendants argue that it would "defy judicial experience and common sense" to assume that the amount in controversy was not satisfied.

There is a "contract exception" which allows a defendant to "introduce evidence regarding damages arising from a source such as a contract provision whether or not the defendant received the contract from the plaintiff." Lowery, 483 F.3d at 1214 n. 66. However, the Defendants have not provided the contract for the Court's review. Without it, it is simply not possible for the Court to "look to the contract and determine what those damages would be." Id.

### c. Kingdom's Settlement Rejections

As evidence of the amount in controversy, the Defendants next point the Court to the settlement offers that Kingdom rejected. Before Kingdom filed its complaint in the Superior Court of Thomas County, Protectors met with Kingdom and offered to settle their dispute for $70,000. Kingdom refused the offer. Then, on November 3, 2009, after the Defendants removed the case to this Court, the Defendants made another settlement offer to Kingdom for $76,000. Kingdom again refused the offer. The Defendants argue that Kingdom's failure to settle for $70,000 and $76,000 show that the amount in controversy more likely than not exceeds $75,000.

Kingdom's refusal to settle for $70,000 prior to the filing of the complaint at most constitutes some evidence that the amount in controversy exceeds $70,000, not $75,000. This is not enough to permit removal. See Love v. N. Tool & Equip. Co., Inc., No. 08-20453, 2008 WL 2955124, at *2 (S.D. Fla. Aug. 1, 2008 ) (rejecting the settlement offer for $70,000 as sufficient evidence and stating that "the settlement offer is evidence that [the Plaintiff] believes her case

11

is worth only $70,000."). Moreover, the settlement offer was rejected five months prior to the filing of the complaint in Superior Court. Courts have recognized that it is less clear whether an offer to settle prior to the filing of a complaint is relevant. Elder v. T-Fal, Inc., No. 1:07-cv-1280, 2007 WL 4060230, at *3 (N.D. Ga. Oct. 31, 2007) (citing cases).

As for Kingdom's refusal to settle for $76,000 made one month after the case was removed, it is not probative evidence that at the time of the removal, the amount in controversy was more than $75,000. For removal to be proper, the removing party must establish federal subject matter jurisdiction at the time the notice of removal is filed. Leonard v. Enterprise Rent-A-Car, 279 F.3d 967, 972 (11th Cir. 2002); Thibodeaux v. Paccar, Inc., 592 F. Supp. 2d 1377, 1379 (M.D. Ala. 2009) (finding that the defendant's offer to settle made almost a month after the case was filed "does not provide evidence [of] the amount of controversy on [the date of the removal].). Kingdom's refusal to settle for $76,000 on November 3, 2009 does not show that on the date of removal, September 11, 2009, the amount in controversy was more than $75,000.

Accordingly, the Court concludes that Kingdom's refusals to accept the Defendants' settlement offers do not constitute evidence showing that the amount in controversy exceeds $75,000.

### d. Attorneys' Fees

Kingdom seeks an award of attorneys' fees pursuant to O.C.G.A. § 13-6-11. A district court may consider a demand for attorneys' fees in determining the

amount in controversy when the attorneys' fees are recoverable by an applicable state statute. Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1265 (11th Cir. 2000) (citations omitted).

The Defendants urge the Court to find that Kingdom's attorneys' fees will exceed $75,000 in the near future. Alternatively, if they do not exceed $75,000, when combined with the other pieces of evidence, then the amount in controversy will exceed $75,000. The Defendants have included an affidavit from their attorney who averred that Kingdom's attorneys' fees would exceed $75,000 in the near future and that it was possible as of November 9, 2009, the date the affidavit was executed, Kingdom's fees had already exceeded $75,000. It also stated that after performing seventy hours of work, Kingdom's fees would exceed $75,000. Kingdom's complaint does not set forth a specific amount of attorneys' fees it requests.

The relevant question is whether the Defendants can show by a preponderance of the evidence that on the date of the removal, the amount in controversy exceeded $75,000. Leonard, 279 F.3d at 972. The affidavit submitted by the Defendants only states that as of November 9, 2009, "it is quite possible" that Kingdom's fees exceed $75,000. The possibility that the fees award already exceeds $75,000 does not satisfy the preponderance of the evidence standard. Moreover, while it may be true that seventy hours of work would produce a fees award in excess of $75,000, there is no evidence regarding the number of hours Kingdom's attorneys had spent on the case prior to the date

of the removal. Without any evidence as to the amount of hours Kingdom's lawyers spent on the case prior to the date of removal, the Court would engage in pure speculation if it came to any conclusion as to the amount of attorneys' fees Kingdom's attorneys accrued prior to the date of removal.[2] Consequently, Kingdom's demand for attorneys' fees is not relevant evidence showing the amount in controversy meets the jurisdictional requirement.

### e. Draft Professional Operational Agreement

The Defendants lastly point the Court to the draft Professional Operational Agreement sent by Kingdom to Protectors on February 6, 2009. The draft agreement states "[Kingdom] has incurred $100,000+ of costs as of 2-1-2009 on [Protectors] behalf . . . ." (Doc. 10 Ex. A ¶ 13). The Defendants argue that Kingdom's admission that it incurred "$100,000+ of costs" on behalf of Protectors' constitutes evidence that Kingdom's claims against Protectors are valued at more than $75,000.

Contrary to what the Defendants assert, it is not clear whether Kingdom claims the "$100,000+ costs" as damages. Kingdom's complaint alleges that Kingdom entered into a contract with United on October 22, 2007 (Compl. ¶ 29). Kingdom then entered into a contract with Protectors on July 9, 2008 (Compl. ¶ 40). The complaint does not mention the draft Professional Operational Agreement nor does the draft Professional Operational Agreement specify that

---

[2] The Defendants removed the case within thirty days of the date the complaint was filed in Superior Court. Even if the Court did estimate the number of hours, it is unlikely that the attorneys worked enough hours prior to the date of removal to produce an award of $75,000 or a lesser award that would push the amount in controversy over $75,000.

14

Kingdom accrued the ("$100,000+ of costs") during the course of its performance under its July 9, 2008 contract with Protectors or under its October 22, 2007 contract with United. Since Kingdom's breach of contract claims asserted in its complaint must arise out of the named contracts in the complaint, the Court cannot find that the "$100,000+ of costs" is claimed by Kingdom as damages.

Even if the Court considered the "$100,000+ of costs" in the draft Professional Operational Agreement as a pre-suit admission of the value of Kingdom's claims, there is no evidence presented by the Defendants showing that Kingdom's demand was an honest assessment of damages. See Jarrell v. Giles, No. 06-135, 2006 WL 3335116, at * 2 (M.D. Ga. Nov. 16, 2006) (stating that before a court should consider a settlement demand in assessing the amount in controversy, "the defendant must show that the settlement demand was an honest assessment of damages, as opposed to mere posturing") (internal citations omitted).

At most, it may consist of some evidence that the amount in controversy exceeds $75,000. However, because the other evidence is not probative of the amount in controversy, this evidence alone cannot satisfy the Defendants' burden.

### IV. CONCLUSION

After reviewing all the evidence before it, the Court cannot say that the Defendants have shown by the preponderance of the evidence that the amount in controversy is more than $75,000. As a result, the Court exercises the

presumption in favor of Kingdom and accordingly remands the case to the Superior Court of Thomas County.

Kingdom asks the Court to award it its attorneys' fees and costs incurred in bringing the motion to remand. Under 28 U.S.C. § 1447(c), a district court may order that the defendant pay costs and attorneys fees incurred as a result of the removal. 28 U.S.C. § 1447(c). The district court should only exercise its discretion to award attorneys' fees "where the removing party lacked an objectively reasonable basis for seeking removal." Bauknight v. Monroe County, Fla., 446 F.3d 1327, 1329 (11th Cir. 2006) (citation omitted). The Defendants did not respond to Kingdom's request for attorneys' fees issue in their response to Kingdom's motion to remand. The Court therefore orders that the Defendants respond to Kingdom's request for attorneys' fees on or before May 14, 2010. The Defendants' response is limited to ten pages. Kingdom then shall have ten days after service of the Defendants' response to file its reply. Kingdom's reply is limited to five pages.

**SO ORDERED**, this the 4th day of May, 2010.

                 *s/ Hugh Lawson*
                 **HUGH LAWSON, SENIOR JUDGE**

lmc